**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CASSANDRA WHITE,** | ) | CASE NO.: |
| **Individually and as Administratrix of** | ) | |
| **the Estate of ZACHARY FORNASH,** | ) | |
| **Deceased,** | ) | |
| | ) | JUDGE: |
| Plaintiff**,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| **CITY OF CANTON; OFFICER** | ) | |
| **GARRETT MARINO; SERGEANT** | ) | **(Jury Demand Endorsed Hereon)** |
| **MICHAEL RASTETTER; JOHN D.** | ) | |
| **GABBARD, CHIEF OF POLICE;** | ) | |
| | ) | |
| Defendants**.** | | |

Now comes Plaintiff Cassandra White ("Plaintiff"), individually and as Administratrix of the Estate of Zachary Fornash, Deceased, by and through undersigned counsel, and for her Complaint against Defendants, states as follows:

## I.  INTRODUCTION

1.     This action arises out of the tragic and senseless shooting death of Zachary Fornash ("Decedent Fornash") on December 5, 2023, outside of his home in Canton, Ohio.

2.     Decedent Fornash lost his life at the hands of a Canton Police Officer for simply walking away from him.

3.     On behalf of Decedent Fornash, Plaintiff seeks damages pursuant to 42 U.S.C. § 1983, for deprivation of Decedent Fornash's clearly established rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution against: (1) Defendant City of Canton ("Defendant Canton") for its unconstitutional policies, customs and/or practices under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and its progeny, and (2)

1

Defendant Garrett Marino ("Defendant Marino"), individually and in his respective capacity as a Canton Police Officer, for his respective violations of Decedent Fornash's right to be free from the use of excessive force.

## II.    JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983 to redress a deprivation of the Fourth Amendment rights of Decedent Williams.

5.      Venue is proper in this Court under 28 U.S.C. §1391, because all incidents, events, and occurrences giving rise to this action occurred in the Northern District of Ohio and, upon information and belief, all the parties reside in this judicial district.

## III.    PARTIES

6.      At all times relevant to this action, Plaintiff was, and is, a resident of the City of Canton, Stark County, Ohio.

7.      Plaintiff was appointed by the Stark County Probate Court on August 7, 2024, as the Administratrix for the Estate of Decedent Fornash.

8.      Defendant City of Canton is a municipal corporation located in Summit County, State of Ohio and, at all times relevant to this action, employed Defendant Marino as an employee within the City of Canton Police Department.

9.      Defendant City maintains an active police force by and through its police department, which lists as one of its guiding principles: "To act with urgency to resolve conflicts in the community, applying common sense, fairness, and honesty in our service."

10.      The Directory of Public Safety and Chief of Police for Defendant City issue "Canton Police Department Rules and Regulations," to define the police purpose and the duties and conduct of all members of the Canton Police Department.

11.     The Canton Police Department Rules and Regulations are organized in a manual.

12.     According to the Foreword to the manual containing the Canton Police Department Rules and Regulations:

    a.    "Employees [of the City of Canton Police Department] are presumed to have knowledge of federal, state, and municipal ordinances in force, as well as the Rules and Regulations within this manual."

    b.    "It shall be the responsibility of all employees to become thoroughly familiar with the contents of this manual."

13.     According to page 4 of the Canton Police Department Rules and Regulations:

    a.    "The law enforcement officer shall assiduously apply himself[/herself] to the study of the principles of the laws which he[/she] is sworn to uphold."

    b.    "The first duty of a law enforcement officer, as upholder of the law, is to know its bounds upon him[/her] in enforcing it."

    c.    The law enforcement officer "will make certain of his[/her] responsibilities in the particulars of their enforcement, seeking aid from his[/her] superiors in matters of technicality or principle when these are not clear to him[/her]."

14.     According to page 15 of the Canton Police Department Rules and Regulations:

    a.    Supervisory officer is defined as, "Any member of the Police Department who attains the rank of Sergeant or above."

15.     According to page 5 of the Canton Police Department Rules and Regulations:

    a.    Defendant police officers "shall be mindful of [their] responsibilit[ies] to pay strict attention to the selection of means in discharging the duties of [their] office[s]."

    b.   "Violations of law or disregard for public safety and property on the part of an officer are intrinsically wrong."

16.    According to page 19 of the Canton Police Department Rules and Regulations:

    a.   "The words 'shall' and 'will' as used herein shall indicate that the action required is mandatory."

17.    According to page 5 of the Canton Police Department Rules and Regulations, Defendant police officers:

    a.   Will "so conduct [their] private [lives] that the public will regard [them] as an example of stability, fidelity, and morality."

    b.   Shall "deal with individuals of the community in a manner calculated to instill respect for its laws and its police service."

    c.   Shall "use powers of arrest strictly in accordance with the law and with due regard to the rights of the citizens concerned."

    d.   Shall "conduct [their] official [lives] in such a manner as will inspire confidence and trust."

    e.   Shall, "at all times, have a clear appreciation of his responsibilities and limitations regarding detention of [a law] violator."

    f.   Shall conduct themselves "in such a manner as will minimize the possibility of having to use force."

18.    Defendants violated the aforesaid Canton Police Department Rules and Regulations.

19.    Defendant Marino is/was a natural person residing in Stark County, Ohio, and is/was an employee within the City of Canton Police Department.

20.    Defendant Sergeant Michael Rastetter is/was a natural person residing in Stark

County, Ohio, and is/was an employee within the City of Canton Police Department and acted as direct supervisor to Defendant Marino.

21.    Defendant Chief John D. Gabbard ("Defendant Chief Gabbard," and "Defendant Chief") is/was a natural person residing in Stark County, Ohio, and is/was an employee within the City of Canton Police Department, and the acting Chief of Police and top decision maker and policy maker at the City of Canton regarding the Canton Police Department and all employees thereof.

22.    Redress is being sought from all Defendants in their official and individual capacities, and all Defendants were acting under and/or outside of color of law and/or pursuant to the policies, customs, and/or usages of the City of Canton and/or the Canton Police Department.

## IV.    STATEMENT OF FACTS

23.    All preceding paragraphs are incorporated as if fully re-written herein.

24.    On the evening of December 5, 2023, Decedent Fornash is at an apartment complex, located at 807 Alan Page Drive SE, in the City of Canton, state of Ohio.

25.    Defendant Marino turns into the parking lot of the apartment complex as Decedent is present.

26.    Defendant Marino meets with person(s) on scene and learns of an argument involving Decedent.

27.    Defendant Marino locates Decedent Fornash who is walking in the complex, and he follows him in his Canton police cruiser.

28.    Defendant Marino exits his police cruiser in pursuit of Decedent Fornash on foot.

29.    Defendant Marino runs toward Decedent Fornash.

30.    Defendant Marino shouts at Decedent Fornash to show his hands, pointing his service weapon at Decedent as he yells commands.

31.     The distance between Decedent Fornash and Defendant Marino increases as Decedent Fornash continues to walk away.

32.     Decedent Fornash stops and begins to turn his head to look back at Defendant Marino when he is shot by Defendant Marino.

33.     When Defendant Marino shoots Decedent, the following is occurring:

    a.   Decedent's hands are in the pockets of a coat he is wearing.

    b.   Defendant Marino is not confronted with any weapon or verbal threats of using a weapon by Decedent, and at no point does Decedent Fornash brandish a weapon.

    c.   Defendant Marino is shouting at Decedent Fornash to put his hands on his head.

    d.   Decedent Fornash continues walking away from Defendant Marino with his back to Defendant Marino.

    e.   Defendant Marino points his firearm at the back of Decedent Fornash.

    f.   While walking away from Defendant Marino, Decedent Fornash keeps his hands and arms in the same stationary position.

    g.   Defendant Marino sees Decedent Fornash turn his head to look towards him.

    h.   When Decedent Fornash turns his head, his body, arms, and hands remain stationary and facing in the direction away from Defendant Marino.

    i.   At the moment that Decedent Fornash turns his head, Defendant Marino fires four rounds into the body of Decedent Fornash, killing him.

34.     Video of the shooting exists.

35.     A review of the video shows at the time that Defendant Marino fires at Decedent Fornash, Decedent Fornash does not:

    a.   Reach for any weapon;

    b.   Make a furtive gesture to indicate he was reaching for a weapon;

    c.   Make any verbal threats of harm or serious harm to Defendant Marino;

    d.   Fight with or otherwise incite Defendant Marino;

    e.   Face Defendant Marino; or

    f.   Change direction as he walks away from  Defendant Marino.

36.    At the time he shoots, Defendant Marino:

    a.   Sees no weapon;

    b.   Encounters no violent threats from Decedent;

    c.   Is in an area that is well lit by outdoor and overhead parking lot lighting;

    d.   Has time to call for backup and plan a life-preserving strategy to engage Decedent;

    e.   Does not call for backup or plan a life-preserving strategy to engage Decedent;

    f.   Has time to deescalate the scene and talk with Decedent;

    g.   Makes no effort to deescalate the scene or talk with Decedent;

    h.   Shoots only when Decedent does what Decedent is told to do: i.e., stop walking.

37.    Immediately, after Defendant Marino shoots:

    a.   Decedent Fornash has conscious awareness of his impending death, as he reaches a hand into the air and speaks to Defendant Marino before he expires;

    b.   Defendant Marino finds no deadly weapon on the person of Decedent; and

    c.   Defendant Marino later constructs an account of what happened during the shooting, to escape accountability for killing Decedent.

38.    At all relevant times herein, Defendant Marino was acting under color of state law, as an agent of Ohio, and within the scope of his duties as a law enforcement officer of the City of

Canton.

39.     At all relevant times herein, Defendant Marino acted unreasonably, negligently, recklessly, wantonly, willfully, knowingly, intentionally, and with deliberate indifference to the safety and rights of Decedent Fornash, when he used deadly force against Decedent Fornash.

40.     Upon information and belief, Defendant Marino is the son of Canton Police Department Captain Lester Marino.

41.     Defendant Marino has a history of repeated acts of excessive force and/or unreasonable violence against citizens in Canton, Ohio.

42.     Upon information and belief, Defendant Marino receives deferential treatment when he breaks the rules of the Canton Police Department or engages in acts of excessive force or violence.

43.     Despite being known for acts of unreasonably violent conduct while on the job as a Canton police officer as detailed herein, including in the killing of Decedent Fornash, Defendant Marino has not been terminated from the Canton Police Department, reprimanded, or disciplined in any meaningful way by Defendant City of Canton, the Command Staff, and/or Defendant Chief Gabbard.

## V.     CLAIMS FOR RELIEF

### COUNT I
### 42 U.S.C. § 1983 - Excessive Force in Violation of the Fourth Amendment
### (Against Defendant Marino)

44.     All preceding paragraphs are incorporated as if fully re-written herein.

45.     This claim is brought pursuant to Title 42 U.S.C. § 1983.

46.     Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of

any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

47.     The Fourth Amendment to the United States Constitution states, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

48.     For decades, the United States Supreme Court has interpreted the Fourth Amendment to the United States Constitution to prohibit a police officer's use of excessive force during the arrest of an unarmed citizen. *See, e.g., Tennessee v. Garner*, 471 U.S. 1, 2 (1985). ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.").

49.     While acting under color of state law, Defendant Marino deprived Decedent Fornash of his well-established right to be free from excessive force, per the authority cited herein.

50.     At all times relevant to this action, Plaintiff asserts that Decedent Fornash had the clearly established constitutional right not to be subjected to excessive force while posing no threat of harm to the Defendants or others.

51.     In other words, on December 5, 2023, Defendant Marino was only permitted to use the amount of force necessary under the circumstances to arrest and/or detain Decedent Fornash.

52.     At all times relevant to this matter, Defendant Marino was clothed with the authority of the state and misused that authority.

53.     In this case, Defendant Marino used excessive force when he seized the person of Decedent Fornash, to wit:

a. Defendant Marino intentionally fired his service weapon at Decedent Fornash and killed him with gunfire while he posed no threat of death or serious bodily harm to him or others;

b. Defendant Marino fired his service weapon at Decedent Fornash while Decedent Fornash was not firing or pointing a deadly weapon or acting as though he had any deadly weapon;

c. Defendant Marino fired his service weapon at Decedent Fornash while Decedent Fornash was retreating and/or had his back towards Defendant Marino;

54.    Defendant Marino used force that was objectively unreasonable.

55.    Defendant Marino engaged in the above acts with a callous or reckless disregard for Decedent Fornash's federally protected rights.

56.    By reason of the foregoing, used excessive force and killed Decedent Fornash, thereby depriving Decedent Fornash of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth (the right to be secure against unreasonable searches and seizures) and Fourteenth Amendments (each citizen has the right to life and liberty) of the United States Constitution to be free from gratuitous and excessive force. Defendant Marino's conduct manifested deliberate indifference to Decedent Fornash's constitutional rights.

57.    As a direct and proximate result of Defendant Marino's conduct, as set forth above, Plaintiff has been damaged, including but not limited to: Decedent Fornash was shot and lived with fear and conscious knowledge of his painful and immediately impending death prior to dying, Plaintiff's family was destroyed, and all have endured pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, emotional agony,

loss of support, loss of companionship, loss of sense of personal safety, dignity, and legal fees and costs.

## COUNT II
### Supervisory Liability
### (Against Supervisory Defendants)

58. All preceding paragraphs are incorporated as if fully re-written herein.

59. This claim is brought pursuant to Title 42 U.S.C. § 1983.

60. At all times relevant herein, Defendant Sergeant Michael Rastetter and Defendant Chief Gabbard are direct supervisors and form part of the chain of command for Defendant Marino.

61. The Supervisory Defendants have supervisory authority over Defendant Marino.

62. At all times relevant herein, Defendant Sergeant Michael Rastetter and Defendant Chief Gabbard ("the Supervisory Defendants") knew or reasonably should have known of, and/or participated in, and/or condoned, and/or ratified:

    a. Defendant Marino's violent history of unreasonable acts of force against Canton citizens, thus allowing Defendant Marino to remain employed as a Canton police officer;

    b. Defendant Marino's shooting at Decedent when he posed no risk of lethal harm to any officer or civilian, as stated herein above;

    c. Defendant Marino shooting at Decedent when Decedent's back was facing Defendant and otherwise made no threats nor violent gestures;

    d. Defendant Marino failing to de-escalate the scene, thereby making the scene more dangerous to Decedent, the officers, and the general public; and

    e. Defendant Marino's use of lethal force while facing no threat of lethal force.

63. The Supervisory Defendants knew or reasonably should have known that his acts

11

and/or failures to act would likely cause the constitutional injury that befell Plaintiff and Decedent Fornash, to wit: by endorsing, promoting, encouraging, and/or not disciplining Defendant Marino, and/or by keeping him employed at the Canton Police Department, and/or by allowing Defendant Marino to continue to use a firearm as a police officer after a long history of unreasonably violent conduct as a police officer and/or under the circumstances detailed in this Complaint, Decedent Fornash was killed and Plaintiff lost Decedent Fornash as a result of Defendants' reckless, wanton, and/or willful actions which were endorsed, condoned, and/or ratified by the Supervisory Defendants.

64.     The Supervisory Defendants had a duty and/or were required by his/their training to take action to discipline and/or otherwise prevent Defendant Marino from engaging in the above-stated conduct.

65.     Despite his/their knowledge of Defendant Marino's misconduct, as stated above, the Supervisory Defendants took no action, failed to impose reasonable discipline, including recommending and achieving termination of employment, failed to follow chain of command, failed to document the instances of misconduct, and/or otherwise abandoned his supervisory duties.

66.     As a result of his failures and/or abandonment of his supervisory duties, as stated above, the Supervisory Defendants created an environment that condoned the aforementioned misconduct and perpetuated and/or facilitated and/or aided Defendant Marino in his unreasonably violent and grotesque seizure of Decedent Fornash's person and the taking of his life when he posed no lethal threat to Defendant Marino or anyone else at the time he was killed.

67.     The Supervisory Defendants engaged in acts and omissions that were the product of a reckless or callous indifference to Decedent Fornash's constitutional rights, to wit:

a.  The Supervisory Defendants trained, endorsed, condoned, and/or conducted Defendant Marino to shoot at subjects in the manner detailed above, i.e., when the subject posed no direct threat to them or the life of another;

b.  Defendant Marino shot and killed Decedent, despite having no reason to use lethal force;

c.  Despite having the aforesaid knowledge, the Supervisory Defendants continue to condone, ratify, and/or approve of the conduct and actions of Defendant Marino and/or continue to employ him as stated above.

68.  By their acts and omissions as stated above, Defendant Marino and the Supervisory Defendants in fact caused Plaintiff's constitutional deprivation: to wit, Mr. Williams was seized/killed with lethal force while unarmed in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

69.  As a direct and proximate result of the Supervisory Defendants' conduct, as set forth above, Plaintiff has been damaged, including but not limited to: Decedent Fornash was shot and lived with fear and conscious knowledge of his painful and immediately impending death prior to dying, Plaintiff's family was destroyed, and all have endured pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, emotional agony, loss of support, loss of companionship, loss of sense of personal safety, dignity, legal fees and costs.

### COUNT III
**Municipal Liability pursuant to *Monell*
(Against Defendant City of Canton)**

70.  All preceding paragraphs are incorporated as if fully re-written herein.

71.  This claim is brought pursuant to Title 42 U.S.C. § 1983.

72.     Municipal bodies, such as Defendant City of Canton, and/or by and through their top policy makers, such as Defendant Chief Gabbard, are liable for constitutional violations under 42 U.S.C. § 1983 when execution of their official policies or customs deprives an individual of rights protected by the Constitution. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

73.     Official policies or customs can result from: (a) a formal regulation or policy statement; (b) an informal custom amounting to a widespread practice that, although not authorized by written law or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (c) the decisions of employees with final policymaking authority; (d) the ratification of such final policymakers of the decisions, and the basis for them, of subordinates to whom authority was delegated subject to those policymakers' review and approval; or the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

74.     A municipality is liable under § 1983 when its agency's policy or custom, as evident from the allegation set forth above and below, is "closely related" to the ultimate constitutional injury suffered by Decedent and/or Plaintiff, and/or causes or occasions the constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

**Unwritten Policy or Custom**

75.     Defendant City of Canton retains an armed police force, the Canton Police Department, with the power to arrest citizens.

76.     Defendant Chief Gabbard oversees the Canton Police Department, and he acts as the top policymaker and supervisor for the Canton Police Department.

77.     Defendant Chief Gabbard is responsible for adopting, implementing, promulgating, and enforcing the policies, customs, and practices of the Canton Police Department as applicable to the officers under his command, and his decisions and acts can be fairly attributed to those of the Canton Police Department and/or the City of Canton itself.

78.     Defendant Chief Gabbard is ultimately responsible for the assignment of personnel for training purposes as well as having the final say as to what training does or does not occur for officers at the Canton Police Department.

79.     Defendant Chief Gabbard is ultimately responsible for the discipline of officers as well as having the final say as to what discipline does or does not occur for officers at the Canton Police Department.

80.     Defendant City of Canton and Defendant Chief Gabbard is/are aware of a history and pattern of violent and unconstitutional police action at the Canton Police Department, where officers of the Canton Police Department engage in violent behavior that involve excessive force in violation of the Fourth Amendment, to wit:

   a.   On New Year's Day in 2022, a Canton Police Officer shot and killed a citizen who was celebrating the holiday with his family. Litigation for this incident is ongoing in this Court: *Williams v. City of Canton, et al.*, 5:2023-cv-00655;

   b.   On August 24, 2024, a Canton Police Officer kicked in the head a defenseless and compliant citizen;

   c.   On April 18, 2024, two Canton Police Officers killed a citizen in police custody, Frank Tyson, and said officers are currently being prosecuted regarding said homicide;

d. Multiple Canton Police Officers have been involved in other incidents of excessive force against Canton citizens, see *Conver, et al. v. City of Canton, et al.*, 5:2025-cv-00866; *Gallagher v. City of Canton, Ohio et al.*, 5:2025-cv-00878.

81.     Based on national data collected, killings by Canton police officers occur at a higher rate than nearly 90% of police departments throughout the United States.

82.     The ongoing pattern, custom, and policy of excessive force within the Canton Police Department is so apparent that the department implemented further de-escalation training this year.

83.     Defendant City of Canton endorses and/or implements and/or acquiesces in a long-standing and unwritten policy or custom of shielding officers from consequences for their application of violence and/or use of excessive force and/or ignoring the use of excessive force on citizens during arrests, to wit:

a. For years prior to Decedent's death, Defendant City of Canton and/or Defendant Chief Gabbard acquiesced to a culture that accepts excessive force as a condition of police work at the Canton Police Department, to the extent that officers are trained and aided on how to avoid prosecution for their violent actions by re-phrasing and artfully summarizing their violent actions and encounters with citizens in police documentation;

b. For years prior to Decedent's death, Defendant City of Canton and/or Defendant Chief Gabbard acquiesced to a culture of violence at the Canton Police Department by abandoning its/his duty under the Constitution for the State of Ohio and/or the Constitution of the United States to exercise control over the Canton Police Department by avoiding any study of the number of excessive

force cases and violence involved in the arrest of citizens, by the Canton Police Department; and/or

   c. For years prior to Decedent's death, Defendant City of Canton and/or Defendant Chief Gabbard perpetuated a culture of violence in the Canton Police Department by abandoning its/his duty under the Constitution for the State of Ohio to remove deputies and/or exercise control over the Canton Police Department by allowing officers to restrict and/or interfere with and/or hamper the internal oversight activities of the Canton Police Department.

84.    The unwritten policy and/or customs stated herein is/are known to Defendant City of Canton and/or Defendant Chief Gabbard, who approved, benefitted from, ratified, encouraged, sanctioned, and/or promoted this policy or custom throughout the Canton Police Department.

85.    Following the death of Decedent, Defendant City of Canton and/or Defendant Chief Gabbard continue to approve, ratify, encourage, sanction, and/or promote the policy or custom of ignoring excessive force and fostering a culture of violence as he/they express support for Defendant Marino's actions regarding the death of Decedent, imposed no discipline on any of the above Defendants, and has changed none of the training at the Canton Police Department.

86.    To date, Defendant City of Canton and/or Defendant Chief Gabbard have never initiated any meaningful policy reviews or culture reforms regarding excessive force within the Canton Police Department.

87.    The aforesaid unwritten policies or customs put Decedent, Plaintiff, and the general public at unreasonable risk of grievous bodily harm, injury, or death.

88.    The aforesaid unwritten policies or customs as shown by the pattern of unreasonably violent conduct and events stated above (and reinforced by the lack of meaningful discipline) were

"closely related" to the ultimate constitutional injury suffered by Decedent and/or Plaintiff and/or were in fact a cause of the death of Decedent.

89.    At all times relevant hereto, Defendant City of Canton initiated, authorized, condoned, ratified, and/or encouraged the aforesaid unwritten policies or customs.

90.    Upon information and belief, Defendant Chief Gabbard and others from the Canton Police Department reviewed documents, discussed, and/or received details and information at the Canton Police about the manner in which officers deploy unreasonable force against citizens, including, without limitation, the manner in which Defendant Marino shot and killed Decedent while he posed no immediate threat.

91.    Upon information and belief, Defendant Chief Gabbard and others from the Canton Police Department were thus on actual and/or constructive notice of the aforesaid unconstitutional acts which form the unconstitutional policies or customs alleged herein - but did nothing about them.

**Objective Indifference - Failure to Train or Discipline**

92.    All preceding paragraphs are incorporated as if fully re-written herein.

93.    Upon information and belief, Defendant City of Canton and Chief Gabbard do not adequately train regarding the use of force, to wit:

      a.    Defendants did not train, promulgate and/or enforce a use of force policy at the APSO that trained deputies as to the appropriate level of force to use in the situation encountered by Defendant Marino; and

      b.    Defendants did not train, promulgate and/or enforce proper de-escalation techniques to use in the situation encountered by Defendant Marino.

94.     Upon information and belief, Defendant City of Canton and Defendant Chief Gabbard do not routinely discipline Canton Police Department officers, such as Defendant Marino, who use excessive force on citizens.

95.     Upon information and belief, Defendant City of Canton and Defendant Chief Gabbard do not discipline Canton Police Department officers, such as Defendant Marino, who fail to de-escalate situations where persons, like Decedent, are retreating from the police and posing no immediate threat.

96.     The failure to adequately discipline and/or train Defendant Marino is well documented, where Defendant Marino has been at the center of several incidents of misconduct, but still allowed to maintain his position and/or continue his duties without material consequence.

97.     These incidents include, but are not limited to, the following:

   a.   94 total reported uses of force;

   b.   Two known internal investigations surrounding use of force;

   c.   At least one reported incident resulting in the need for verbal counseling;

   d.   At least six written reprimands;

   e.   At least one known 60-day suspension;

   f.   several instances of improperly striking suspects in the head with fists and/or striking suspects in order to injure them;

   g.   One incident where he improperly pointed his firearm at a citizen, re-holstered the firearm and kicked the citizen to the ground. A letter of counseling and remedial training was issued as a result;

   h.   Several instances where he injured suspects in custody;

i. One incident where he struck a suspect three times in order to "discourage further resistance." The reviewing sergeant requested further review by professional standards, stating "Officer Marino may have been able to use other methods to gain compliance";

j. One incident where he kicked a resisting subject while assisting with an arrest. Defendant Chief Gabbard recommended additional training in de-escalation and apprehension tactics;

k. Multiple instances of improperly pointing firearms at suspects.

98. In short, Defendant Marino is widely known to be violent towards citizens but was never adequately disciplined, i.e. terminated from employment, to actually correct his ongoing and commonplace conduct of excessive force and protect the citizens of Canton from his violent tactics.

99. The need for said training and discipline, including termination from employment, as aforesaid, is so obvious that the failure of Defendants to conduct said training and discipline establishes Defendants' objective deliberate indifference to the constitutional rights of Plaintiff and Decedent and all who live in the City of Canton.

100. As a direct and proximate result of Defendants' acts or failures to act and/or written and/or unwritten policies or customs and failure to train and discipline as aforesaid: Decedent Fornash was shot and lived with fear and conscious knowledge of his painful and immediately impending death prior to dying, Plaintiff's family was destroyed, and all have endured pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, emotional agony, loss of support, loss of companionship, loss of sense of personal safety, dignity, and legal fees and costs.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, for not less than $1,000,000.00, including but not limited to:

A.    Compensatory and consequential damages in an amount to be determined by the Court in excess of the Court's jurisdictional amount;

B.    Punitive damages in an amount to be determined at trial, for the willful, reckless, and malicious conduct of Defendants;

C.    Equitable relief, including that Defendant Canton be made to adopt an appropriate policy to prevent future instances of the type of misconduct described herein;

D.    Attorneys' fees and all costs associated with this action; and

E.    Any and all other relief that this Court deems equitable, just and proper.

## VII.    JURY DEMAND

Plaintiff respectfully demands a trial by jury of the within matter.

Respectfully submitted,

*/s/ Kenneth P. Abbarno*
Kenneth P. Abbarno (0059791)
Robert F. DiCello (0072020)
Justin J. Hawal (0092294)
Peter C. Soldato (0099356)
Joseph T. Frate (0101377)
Jordyn A. Parks (00102573)
**DiCELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, Ohio 44060
Tel.: 440-953-8888
kabbarno@dicellolevitt.com
rfdicello@dicellolevitt.com
jhawal@dicellolevitt.com
psoldato@dicellolevitt.com
jfrate@dicellolevitt.com
jparks@dicellolevitt.com
***Counsel for Plaintiff***